896 F.Supp. 66 (1995)
IONICS, INC., Plaintiff,
v.
ELMWOOD SENSORS, INC., Defendant.
CA 94-10548-MEL.
United States District Court, D. Massachusetts.
August 23, 1995.
Frank W. Beckstein, III, John F. Rooney, Melick & Porter, Boston, MA, and Tina M. Traficanti and Anthony M. Doniger, Sugarman, Rogers, Barshak & Cohen, Boston, MA, for plaintiff.
Thane D. Scott, Daryl J. Lapp, and Maureen A. Broe, Palmer & Dodge, Boston, MA, for defendant.
*67 LASKER, District Judge.
Ionics manufactures hot and cold water dispensers; Elmwood manufactures thermostats. During 1990 and 1991, Ionics purchased approximately 16,000 thermostats from Elmwood and installed them as component parts in water dispensers that were subsequently leased to third parties. Soon after they were placed in use, several Ionics water dispensers caused fires which, Ionics alleges, resulted from defects in Elmwood's sensors. After Elmwood rejected Ionics' claim for damages, Ionics filed this suit.
Elmwood now moves for partial summary judgment limiting its exposure. Neither party disputes that they entered into a valid contract specifying both the quantity of sensors to be sold and the price to be paid. Rather, the instant motion concerns a "battle of the forms," the outcome of which will determine the extent of Elmwood's liability in the event Ionics prevails in establishing that the sensors caused the fires.
Ionics sent Elmwood a purchase order form each time it bought thermostats. The order form contained 20 "conditions," two of which were:
18. REMEDIES  The remedies provided Buyer herein shall be cumulative and in addition to any other remedies provided by law or equity. A waiver of a breach of any provision hereof shall not constitute a waiver of any other breach. The laws of the state shown in Buyer's address printed on the masthead of this order [i.e., Massachusetts] shall apply in the construction hereof.
19. ACCEPTANCE  Acceptance by the Seller of this order shall be upon the terms and conditions set forth in items 1 to 17 inclusive and elsewhere in this order. Said order can be so accepted only on the exact terms herein set forth. No terms which are in any manner additional to or different from those herein set forth shall become a part of, alter or in any way control the terms and conditions herein set forth.
Whenever Elmwood received an order from Ionics, it shipped the thermostats, which Ionics paid for and installed. With each shipment of sensors, Elmwood included an acknowledgement form, which contained this language:
This will acknowledge receipt of Buyer's order and state Seller's willingness to sell the good's ordered but only upon the terms and conditions set forth herein and on the reverse side hereof as a counteroffer. Buyer shall be deemed to have accepted such counteroffer unless it is rejected in writing within ten (10) days of the receipt hereof, and all subsequent action shall be pursuant to the terms and conditions of this counteroffer only; any additional or different terms are hereby objected to and shall not be binding upon the parties unless specifically agreed to in writing by Seller.
Like Ionics' order form, the back of Elmwood's acknowledgement form listed several "terms and conditions," two of which were:
9. All goods manufactured by Elmwood Sensors, Inc. are guaranteed to be free of defects in material and workmanship for a period of ninety (90) days after receipt of such goods by Buyer or eighteen months from the date of manufacturer [sic] (as evidenced 4by the manufacturer's date code), whichever shall be longer. THERE IS NO IMPLIED WARRANTY OF MERCHANTABILITY AND NO OTHER WARRANTY, EXPRESSED OR IMPLIED, EXCEPT SUCH AS IS EXPRESSLY SET FORTH HEREIN. SELLER WILL NOT BE LIABLE FOR ANY GENERAL, CONSEQUENTIAL OR INCIDENTAL DAMAGES, INCLUDING WITHOUT LIMITATION ANY DAMAGES FROM LOSS OF PROFITS, FROM ANY BREACH OF WARRANTY OR FOR NEGLIGENCE, SELLER'S LIABILITY AND BUYER'S EXCLUSIVE REMEDY BEING EXPRESSLY LIMITED TO THE REPAIR OF DEFECTIVE GOODS, OR THE SHIPMENT OF EQUIVALENT GOODS F.O.B. THE SHIPPING POINT INDICATED ON THE FACE HEREOF OR THE REPAYMENT OF THE PURCHASE PRICE UPON THE RETURN OF THE GOODS OR THE GRANTING OF A REASONABLE ALLOWANCE ON ACCOUNT OF ANY DEFECTS, AS *68 SELLER MAY ELECT ... [emphasis in original].
14. This instrument and the performance hereunder shall be governed by the laws of the state of the Seller's place of business [i.e., Rhode Island] and this instrument shall be considered a contract made in that state. Buyer agrees that it may bring suit against Seller only in said state, and for purposes of suit against the Buyer, submits itself to the jurisdiction of that state.
As this recital of the respective forms indicates, the terms are diametrically opposed to each other on the issue of whether all warranties implied by law were reserved or waived and also disagree as to whether Massachusetts or Rhode Island law applies. Like mirrors facing each other, the terms of the Ionics order form reject the terms of the Elmwood acknowledgement form which reject the terms of the Ionics order form. The parties agree that if the conflicting language is excluded from the contract, an implied warranty of fitness attaches to the sale of the sensors.
In Roto-Lith, Ltd. v. F.P. Bartlett & Co., Inc., 297 F.2d 497 (1st Cir.1962), the Court of Appeals of this Circuit, construing Massachusetts law, held that, in a sale of goods between commercial actors, additional terms stated in an acknowledgement to a purchase order become part of the sales contract as long as the buyer does not object to the additional conditions or withdraw its order in response. Elmwood contends that, because Ionics did not specifically object to the terms of Elmwood's acknowledgement form or return the sensors, Roto-Lith requires that the acknowledgement form's limitation of liability and choice of law clauses be given effect without regard to contrary terms contained in Ionics' order form.
Ionics responds that the controlling law is not Roto-Lith but § 2-207 of the Uniform Commercial Code as enacted in both Massachusetts, M.G.L. c. 106, § 2-207, and Rhode Island, R.I.G.L. § 6A-2-207. Section 2-207 provides:
(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.
(2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:
(a) the offer expressly limits acceptance to the terms of the offer;
(b) they materially alter it; or
(c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.
(3) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this chapter.
The official commentary accompanying § 2-207 provides in pertinent part:
6. ... Where clauses on confirming forms sent by both parties conflict[,] each party must be assumed to object to a clause of the other conflicting with one on the confirmation sent by himself. As a result[,] the requirement that there be notice of objection which is found in subsection (2) [of § 2-207] is satisfied and the conflicting terms do not become part of the contract. The contract then consists of the terms originally expressly agreed to, terms on which the confirmations agree, and terms supplied by this Act, including subsection (2)....
7. In many cases, as where goods are shipped, accepted and paid for before any dispute arises, there is no question whether a contract has been made. In such cases, where the writings of the parties do not establish a contract, it is not necessary to determine which act or document constituted the offer and which the acceptance.... The only question is what terms are included in the contract, and *69 subsection (3) [of § 2-207] furnishes the governing rule.
Ionics argues that § 2-207 plainly requires that conflicting language in the parties' respective forms as to the scope of warranties and choice of law be ignored.
The language of U.C.C. § 2-207(3) and accompanying comments (6) and (7), quoted above, is certainly unambiguous, speaks precisely to the fact pattern presented here and compels the conclusion that Ionics is correct. Roto-Lith is distinguishable from the instant case in that, there, the seller's language limiting warranties implied at law was proposed as an addition to, but was not in conflict with, the explicit terms of the buyer's form. Here, the explicit terms of the parties' forms conflict with and reject each other. The fact that the Roto-Lith court did not even mention § 2-207(3) is indicative of this distinction between the two cases.
Elmwood argues that this case and Roto-Lith are not materially different because, in Roto-Lith, the buyer issued its form under the assumption that all implied warranties would remain in effect. Elmwood's logic holds that this assumption amounted to an implicit term of the buyer's form which, furthermore, was in conflict with the term of the seller's form which provided for a waiver of all implied warranties. In Elmwood's view, the conflict in Roto-Lith  between an implicit term of the buyer's form and an explicit term of the seller's form  and the conflict here  between explicit terms in both the buyer's and seller's forms  are legally indistinguishable and, therefore, Roto-Lith dictates the result as to both.
But this proves too much. If Roto-Lith applied in cases in which terms of both parties' confirming forms explicitly conflict and reject each other as well cases in which the seller's form simply adds new terms, § 2-207(3) would be preempted entirely. Following Elmwood's logic to its conclusion, Roto-Lith would provide the rule in any case in which the seller's form deviated from the buyer's form, thereby displacing an unambiguous controlling statute.

* * *
Elmwood's motion for partial summary judgment is denied. Under U.C.C. § 2-207(3), as enacted in both Massachusetts and Rhode Island, and the accompanying commentary of the drafters, conflicting language as to warranties and choice of law in Ionics' and Elmwood's respective confirming forms is stricken.
It is so ordered.